**UNITED STATES of America**

v.

**Lucy Wright DUFF, Robert J. Woodruff.**

**Crim. Nos. 84–0487–01, 84–0484.**

United States District Court, District of Columbia.

March 28, 1985.

Lucy Duff, pro se.

Robert J. Woodruff, pro se.

John Finnegan, Asst. U.S. Atty., Washington, D.C., for the U.S.

### MEMORANDUM AND ORDER

JACKSON, District Judge.

Lucy Duff and Robert Woodruff appeal *pro se* from their convictions by a United States magistrate of a violation of a National Park Service regulation, 36 C.F.R. § 50.19(e)(9), which prohibits individuals' wielding signs or placards while standing motionless within the mid-portion of the White House sidewalk.[1] Although appellants concede their knowing and willful violation of the regulation, and do not contest the fairness of their trial, they nevertheless contend that their convictions should be overturned because the regulation is unconstitutional. For the reasons set forth below, the magistrate's judgments will be affirmed.

The facts are undisputed. On October 31, 1984, at approximately 1:00 p.m., Officer John T. McClure of the U.S. Park Police observed appellants Duff and Woodruff, holding signs,[2] standing in the center portion of the sidewalk in front of 1600 Pennsylvania Avenue. Officer McClure testified at trial that after two or three minutes he approached the appellants, advised them that they were in violation of the regulation, and asked whether they would comply with it. Ms. Duff and Mr. Woodruff each responded negatively, and the officer accordingly placed them under arrest. Appellants neither objected to nor resisted their arrests.

Officer McClure was the only government witness. Appellants did not cross-examine or offer evidence of their own, but they did read a prepared statement as to their reasons for disobeying the regulation. They were found guilty, and each was sentenced to 30 days' imprisonment, with execution of the sentence suspended, and one year's unsupervised probation. This appeal followed.[3]

The Court of Appeals for the D.C. Circuit has recently determined § 50.-

---

1. Section 50.19(e)(9) reads, in pertinent part:
 No signs or placards shall be held, placed or set down on the center portion of the White House sidewalk, comprising ten yards on either side of the center point of the sidewalk; Provided, however, that individuals may demonstrate while carrying signs on that portion of the sidewalk if they continue to move along the sidewalk.
 The term "White House sidewalk" is defined in § 50.19(a)(5) as "the south sidewalk of Pennsylvania Avenue, NW., between East and West Executive Avenues, NW.," i.e., in front of the White House opposite Lafayette Park.

2. Ms. Duff was carrying a sign which read, "People not for profit." Mr. Woodruff's sign said, "DSA, here we stand."

3. Appeal to a district court from a magistrate's judgment of conviction is authorized by 18 U.S.C. § 3402 and Rule 7 of the Rules of Procedure for the Trial of Misdemeanors Before United States Magistrates.

19(e)(9) to be constitutional in most of the respects appellants say it is not.[4] *White House Vigil v. Clark,* 746 F.2d 1518 (D.C. Cir.1984). This Court is, of course, obliged to follow that decision. Noting that the government had not entirely prohibited expressive activities either on the White House sidewalk in its entirety or in the "center zone,"[5] the court stated that the government "may adopt reasonable 'time, place and manner' restrictions on the exercise of free speech, so long as the restrictions are content-neutral, are narrowly tailored to serve a significant governmental interest, and leave open ample alternative channels of communication." 746 F.2d at 1526–27.[6] It then found that § 50.19(e)(9) is all of the above: content-neutral—indeed, content-silent; "narrowly tailored" to serve the governmental interest involved, i.e., the aesthetics of the front of the executive mansion; and affecting no "alternative channel of communication" imagination can devise so long as it is not pursued in a static posture. The decision thus lays to rest, as far as this Court is concerned, most of appellants' arguments.

■ The circuit court did not, however, have occasion to consider in *White House Vigil* whether the regulation comports with the Equal Protection Clause. Appellants contend that individuals who take to the sidewalk in front of the White House to protest are likely to be people of "modest means," unable to afford more effective forms of communication. Therefore, they say, the regulation discriminates on the basis of wealth.

The Supreme Court has stated that "[W]hen government regulation discriminates among speech-related activities in a public forum, the Equal Protection Clause mandates that the legislation be finely tailored to serve substantial state interests, and the justifications offered for any distinctions it draws must be carefully scrutinized." *Carey v. Brown,* 447 U.S. 455, 461–62, 100 S.Ct. 2286, 2290–91, 65 L.Ed.2d 263 (1980). *See also Police Department of Chicago v. Mosley,* 408 U.S. 92, 98–99, 101, 92 S.Ct. 2286, 2291–92, 2293, 33 L.Ed.2d 212 (1972). So scrutinized, however, it is obvious that the regulation at issue here makes no distinctions at all on its face, on the basis of wealth or otherwise. And appellants suggest no reason to suppose the penurious to be generically any less ambulatory than the rest of the population and, thus, unable to keep moving while they make their statements, which is all the regulation requires of them.

In summary, as the court of appeals noted in *White House Vigil:*

> The center zone restriction burdens speech only in an indirect and insubstantial way. Protesters are free to engage in a wide variety of expressive activities within the center zone; they are only precluded while there from engaging in stationary protest. The center zone oc-

---

**4.** The court also affirmed the constitutionality of other portions of the regulation concerning the size, construction and placement of signs and placards, and the restrictions in § 50.-19(e)(10) on the placement of parcels and other containers on the White House sidewalk. It is only the "center zone" portion of § 50.19(e)(9) which is of present concern, however, because appellants were not charged with violation of any other provision.

**5.** The portion of the sidewalk in question is the area within 10 yards to either side of the center point of the sidewalk. Officer McClure testified at trial that the center point of the sidewalk is easily identifiable, because it is designated by a unique decorative column on the fence.

For protesters' purposes the "center zone" provides a "special backdrop" which they believe essential to the effectiveness of protest activities, because it visually enhances any statements made from there. As the court of appeals noted in *White House Vigil,* however, there is also a clear view of the White House from non-central portions of the sidewalk. 746 F.2d at 1538.

**6.** *See also Regan v. Time, Inc.,* —— U.S. ——, 104 S.Ct. 3262, 3266–67, 82 L.Ed.2d 487 (1984); *Clark v. Community For Creative Non-Violence,* —— U.S. ——, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221 (1984); *Heffron v. International Society for Krishna Consciousness, Inc.,* 452 U.S. 640, 647–48, 101 S.Ct. 2559, 2563–64, 69 L.Ed.2d 298 (1981); *Virginia Pharmacy Board v. Virginia Citizens Consumer Council,* 425 U.S. 748, 771, 96 S.Ct. 1817, 1830, 48 L.Ed.2d 346 (1976); *Consolidated Edison Co. v. Public Service Commission,* 447 U.S. 530, 535, 100 S.Ct. 2326, 2332, 65 L.Ed.2d 319 (1980).

cupies no more than seven percent of the total length of the sidewalk; protesters may remain stationary along any portion of the remainder.

746 F.2d at 1537.[7]

For the foregoing reasons, therefore, the Court holds that 36 C.F.R. § 50.19(e)(9) is constitutional, and it is, this 27th day of March, 1985,

ORDERED, that the magistrate's judgments of conviction are affirmed.

**7.** In *Kovacs v. Cooper,* 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 813, *reh'g denied,* 336 U.S. 921, 69 S.Ct. 638, 93 L.Ed. 1083 (1949), the Supreme Court upheld the constitutionality of a municipal ordinance forbidding the use on public streets of "sound trucks" or other instruments which emit "loud and raucous noises" and are attached to vehicles. Although *Kovacs* was decided in the context of the First, not the Fourteenth, Amendment, the Court made the equally apposite observation: "That more people may be more easily and cheaply reached by sound trucks, perhaps borrowed without cost from some zealous supporter, is not enough to call forth constitutional protection for what those charged with public welfare reasonably think is a nuisance when easy [alternate] means of publicity are open." 336 U.S. at 88–89, 69 S.Ct. at 454.